UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| DH ORCHARD LIMITED, | § § | CASE NO. 09-12154-CAG |
| DEBTOR | § § | CHAPTER 11 |
| 836 BEE CAVES ROAD, SUITE 202 AUSTIN, TEXAS 78746 | § § § § | |
| TAXPAYER IDENTIFICATION NO.: 26-3201941 | § § § | |

**DEBTOR'S PROPOSED DISCLOSURE STATEMENT
IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION, UNDER
CHAPTER 11, TITLE 11 UNITED STATES CODE, BY DH ORCHARD, LIMITED**

<u>NOTICE</u>: THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT UNDER BANKRUPTCY CODE SECTION 1125(b) FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1125(a).

Dated this 3rd day of November, 2009.

                BROWN MCCARROLL, L.L.P.
                111 Congress Ave., Suite 1400
                Austin, Texas 78701
                (512) 479-9758
                (512) 226-7318 (Fax)
                Email: lbutler@mailbmc.com

                By: */s/ Lynn Hamilton Butler*
                   Lynn Hamilton Butler
                   Texas State Bar No. 03527350

                ATTORNEYS FOR DH ORCHARD LIMITED

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1
    A. Purpose of the Disclosure Statement ................................................................. 1
    B. Construction ....................................................................................................... 1
    C. Source of Information ........................................................................................ 1
    D. Voting Procedure ............................................................................................... 1
    E. Confirmation Hearing ........................................................................................ 2
    F. Disclaimers ........................................................................................................ 2

II. GENERAL INFORMATION ......................................................................................... 4
    A. Events leading to the bankruptcy filing ............................................................ 4
    B. Ownership and Management ............................................................................. 4
    C. Asset Value ........................................................................................................ 5
    D. Financial Information ........................................................................................ 5
        1. Income ................................................................................................... 5
        2. Monthly Operating Reports ................................................................... 5
    E. Significant Post-Petition Events ........................................................................ 6
        1. Commencement of Chapter 11 .............................................................. 6
        2. Retention of Professionals ..................................................................... 6
        3. Cash Collateral ....................................................................................... 6
        4. Bar Date ................................................................................................. 6
    F. Summary of the Plan of Reorganization ........................................................... 6

III. DESCRIPTION OF TREATMENT OF CLAIMS UNDER PLAN ............................... 7
    Class I - Administrative Claims .................................................................................... 7
    Class II - Priority Non-Tax Claims. ............................................................................... 7
    Class III – Priority Tax Claims ...................................................................................... 8
    Class IV - Secured Claim of Bexar County Tax Assessor ............................................ 8
    Class V - Secured Claim of Doss, Ltd. .......................................................................... 8
    Class VI - Secured Claim of Cumberland 90 ................................................................ 8
    Class VII - Unsecured Claims ....................................................................................... 8
    Class VIII - Equity Interests .......................................................................................... 9

IV. MEANS FOR IMPLEMENTATION OF THE PLAN ................................................... 9

V. LIQUIDATION ANALYSIS ........................................................................................ 10
    A. Property ............................................................................................................ 10
    B. Claims .............................................................................................................. 11
    C. Analysis ........................................................................................................... 11
    D. Executory Contracts and Unexpired Leases .................................................... 11
    E. Miscellaneous Provisions ................................................................................ 11
        1. Retention of Jurisdiction ...................................................................... 11
        2. Amendment and/or Modification of Plan ............................................ 11
        3. Severability .......................................................................................... 11
        4. Discharge ............................................................................................. 12

|   |   |   | 5. | Binding Effect | 12 |
|---|---|---|---|---|---|
|   |   |   | 6. | Conditions Precedent | 12 |

| VI. | TAX CONSEQUENCES OF PLAN | | | | 12 |
|---|---|---|---|---|---|
|   | A. | Tax Consequences to Holders of Claims | | | 13 |
|   | B. | Tax Consequences of Holders of Interests | | | 13 |

| VII. | CONFIRMATION STANDARDS | | | | 13 |
|---|---|---|---|---|---|
|   | A. | Acceptance | | | 13 |
|   | B. | Unfair Discrimination/Fair and Equitable | | | 13 |
|   |   |   | 1. | Secured Creditors | 14 |
|   |   |   | 2. | Unsecured Creditors | 14 |
|   |   |   | 3. | Equity Interests | 14 |
|   |   |   | 4. | Absolute Priority Rule | 14 |
|   | C. | Feasibility | | | 14 |
|   | D. | Best Interests | | | 15 |
|   | E. | Good Faith Requirement | | | 15 |

| VIII. | ALTERNATIVES TO THE PLAN | | | | 15 |
|---|---|---|---|---|---|
|   | A. | Dismissal | | | 15 |
|   | B. | Conversion to Chapter 7 | | | 15 |

| IX. | CONCLUSION AND RECOMMENDATION | 15 |
|---|---|---|

# I. INTRODUCTION

This Disclosure Statement ("Disclosure Statement") is submitted by DH Orchard Limited (hereinafter "DHO" or "Debtor"), debtor-in-possession in the above-referenced chapter 11 case, in connection with Debtor's Plan of Reorganization dated November 2, 2009 (the "Plan") filed with the Court, a copy of which is attached hereto as **Exhibit A**.

  A. Purpose of the Disclosure Statement

Pursuant to the terms of Chapter 11 of the United States Bankruptcy Code (the "Code"), a plan proponent may not solicit support of a plan, unless at the time of, or prior to solicitation there is transmitted to the holders of claims and interests: (i) a copy of summary of the Plan, and (ii) a written disclosure statement which has been approved by the Court as containing information of the kind, and in sufficient detail, to enable a typical creditor to make an informed judgment in whether to vote to accept or reject the Plan.

In providing this Disclosure Statement to parties-in-interest, the Plan Proponent expressly seeks to enable such parties to make an informed judgment on whether to approve or reject the Plan. This Disclosure Statement contains a summary of the Plan, general information about the Debtor and its Chapter 11 Case and financial information concerning the Debtor's current and future business operations based on the sources and information identified in C below.

  B. Construction

Except where otherwise required by the context of this Disclosure Statement, and any subsequent amendments or modifications hereof, capitalized terms used but not defined herein shall have the meanings set forth in the Plan or the Bankruptcy Code. The terms of the Plan govern in the event of any inconsistency with the summaries in the Disclosure Statement. All exhibits to the Disclosure Statement are incorporated into and are a part of this Disclosure Statement as if set forth in full herein.

  C. Source of Information

The information contained herein has been from the information available to the Debtor and contained in the record of this Court as filed by the Debtor, including (1) the Debtor's Schedules and Statement of Financial Affairs, (2) the Debtor's Monthly Operating Reports, and (3) other pleadings.

  D. Voting Procedure

Creditors holding Allowed Claims, as that term is defined in the Plan, are entitled to vote to accept or reject the Plan. In voting to accept or reject the Plan, creditors and parties in interest will be requested to fill out only the Official Ballot as approved by the Court. All ballots must be received by Debtor's counsel at the address below by a date to be fixed by the Court. Unless the Court orders otherwise, no vote received after such date will be counted in determining whether the Plan should be confirmed. Notice of the deadline for submitting ballots will be given.

Additionally, once a ballot has been submitted it cannot be withdrawn or modified except as provided under the Bankruptcy Code and/or Federal Rules of Bankruptcy Procedure.

Even though a creditor may abstain from voting or vote to reject the Plan, all creditors will be bound by the terms and treatment set forth in the Plan, if the Plan is accepted by the requisite majority in each class of creditors and/or is confirmed by the Court. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed for purposes of distribution under the Plan. All holders of Allowed Claims and Interests who are entitled to vote are therefore urged to complete, sign, and promptly mail the ballot to:

Lynn Hamilton Butler
BROWN MCCARROLL, L.L.P.
111 Congress Ave., Suite 1400
Austin, Texas 78701
(512) 479-9758
(512) 226-7318 (Fax)
Email: lbutler@mailbmc.com

In order for the Plan to be deemed accepted by a class of creditors, at least two-thirds (2/3rds) in dollar amount and more than one-half (1/2) in total number of Allowed Claims of the creditors in such class who actually cast votes on the Plan must accept the Plan. Under certain limited circumstances, as described in § 1129(b) of the Code, the Court may confirm the Plan notwithstanding the rejection thereof by more than one-third (1/3rd) in the amount or one-half (1/2) in number of creditors voting on the Plan in any given class. Debtor hereby notifies all creditors that it intends to seek confirmation under § 1129(b) of the Code in the event that any class of creditors is deemed to reject the Plan.

      E.     Confirmation Hearing

The Court will set a hearing to determine whether or not the Plan has been accepted by the requisite number of holders of claims and interests and whether or not all other confirmation requirements have been satisfied. The hearing shall be held before the Honorable Craig A. Gargotta, United States Bankruptcy Judge at Austin Courtroom 1, Homer Thornberry Judicial Building, 903 San Jacinto, Austin, Texas 78701 (the "Confirmation Hearing"). Notice of the date of such hearing shall be given. The Confirmation Hearing may be adjourned from time to time without further written notice to parties other than an announcement in open court. Any objection to confirmation must be made in writing and specify in detail the name and address of the objecting party, all grounds for objection, and the amount of the claim against or a description of the interest in the Debtor held by the objecting party. Any such objections must be filed with the Court, and served on all parties entitled to notice in the bankruptcy case, by a date which shall be fixed by the Court.

      F.     Disclaimers

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. THE STATEMENTS CONTAINED

IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR (INCLUDING BUT NOT LIMITED TO EXISTING LITIGATION INVOLVING THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS) OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION ON HOLDERS OF CLAIMS OR INTERESTS. THE DESCRIPTIONS SET FORTH HEREIN OR THE ACTIONS, CONCLUSIONS OR RECOMMENDATIONS OF THE DEBTOR OR ANY OTHER PARTY, BUT NEITHER THE DEBTOR NOR ANY SUCH PARTY MAKES ANY REPRESENTATION OR WARRANTY REGARDING SUCH DESCRIPTION.

ONCE THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS HAS APPROVED THIS DISCLOSURE STATEMENT, WHICH APPROVAL DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THE PLAN ANNEXED HERETO AND DESCRIBED IN THIS DISCLOSURE STATEMENT THE APPROVAL OF THE DISCLOSURE STATEMENT WILL MEAN THAT THE BANKRUPTCY COURT HAS FOUND THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHTS TO VOTE UPON THE PLAN.

THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. THE DEBTOR MAINTAINS THAT NO SEC APPROVAL IS REQUIRED.

THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN SHOULD BE READ IN THEIR ENTIRETY. CREDITORS AND EQUITY INTEREST HOLDERS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL, EACH OTHER AND SUCH OTHER ADVISORS AS MAY BE NECESSARY OR APPROPRIATE, AND TO REVIEW ALL OF THE PLEADINGS FILED IN THESE BANKRUPTCY CASES IN ORDER TO FULLY UNDERSTAND THE DISCLOSURES MADE HEREIN, AND ANY OTHER PERTINENT MATTERS IN THESE PROCEEDINGS. ANY PLAN OF REORGANIZATION WILL BE COMPLEX, AND ANY INTELLIGENT JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION

CONTAINED IN THIS DISCLOSURE STATEMENT, THE FULL COMPLEXITIES OF THE PLAN, AND MATTERS PREVIOUSLY OCCURRING IN THESE BANKRUPTCY CASES.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY BY THE DEBTOR OTHER THAN AS SET FORTH BELOW. THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE DEBTOR'S BEST ESTIMATE OF THE VALUES OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN OF REORGANIZATION AND THIS DISCLOSURE STATEMENT. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF THE FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

## II. GENERAL INFORMATION

A. Events leading to the bankruptcy filing

The Debtor is a Texas limited partnership, which was formed for purpose of purchasing undeveloped real property for the purposes of development. The real property consists of 564.8 acres and is located at the northwest quadrant of U.S. Highway 90 and Texas State Highway 211 (the "Property"). A more detailed description of the property is contained in the investment materials used by the Debtor and attached hereto as **Exhibit B.** To purchase the Property, Debtor, through its respective limited partners, funded the Partnership and purchased the Property on September 8, 2008. To do so, the Debtor obtained a purchase money loan from one of its limited partners, Cumberland 90, Ltd. ("Cumberland 90") and granted a deed of trust in favor of Cumberland 90. A prior existing mortgage on the Property is held by Doss, Ltd. continues to encumber the Property and is made subject to a certain Tri-Party Agreement between the Debtor, Cumberland 90 and Doss, Ltd., with a Memorandum Of Agreement filed of record in Bexar County, Texas on September 11, 2009. On March 6, 2009, the Debtor entered into a Modification of its loan with Cumberland 90 in which the loan maturity date of the obligation was extended to January 31, 2011. However, the deterioration of the economy lead to the Debtor defaulting on the Cumberland 90 loan. On June 5, 2009, Cumberland 90 notified the Debtor of a default in the payment on its note. On June 11, 2009, Cumberland 90 notified the Debtor that it had accelerated the note. On July 14, 2009, Cumberland 90 notified the Debtor that it had posted its collateral – the Property – for foreclosure on August 4, 2009 in Bexar County, Texas. At the time of the posting for foreclosure, the Debtor had increased the value of the Property's value by the addition of certain real estate entitlements. However, no significant sale of the Property had occurred that would have generated sufficient income to continue to service the note obligations to Cumberland 90.

On August 3, 2009, the Debtor filed for protection under Chapter 11 of the United States Bankruptcy Code, thereby stopping the planned foreclosure by Cumberland 90.

B. Ownership and Management

Debtor is a Texas limited partnership. The general partner of the Debtor is Orchard Limited GP, L.L.C. The partners of Debtor are as follows:

| **Name** | **Percentage** | **Classification** |
|---|---|---|
| Orchard Limited GP, LLC | 0% | General Partner |
| SCM Beta Partnership I, LP Inv. No. 1 | 35.599% | Limited Partner |
| SCM Beta Partnership I, LP Inv. NO. 2 | 47.39336% | Limited Partner |
| Dia Lucrii Global, LP | 11.866% | Limited Partner |
| Cumberland 90, Ltd. | 2.871% | Limited Partner |
| Charlotte A. Novak | 1.148% | Limited Partner |
| Dale and Deborah Schneider | 0.574% | Limited Partner |
| Dia Lucrii Global, LP | 0.475% | Limited Partner |

C.	Asset Value

On July 9, 2008, the Debtor obtained an appraisal of the Property from Southwest Appraisal Group, L.L.C., specifically by Scott T. Speck, an MAI appraiser. The appraisal valued the Property at $100,000,000.00 as of July 9, 2008. An accurate copy of the appraisal letter dated July 17, 2008 is attached as **Exhibit C.**

On December 11, 2008, the Debtor requested an update analysis of the market value appraisal of the Property. The conclusion of Southwest Appraisal Group, L.L.C. was that:

> *It is our opinion that the appraised value estimated in the original appraisal has not substantially changed since July.*

An accurate copy of the appraisal letter dated December 11, 2008, is attached as **Exhibit D.**

D.	Financial Information

1.	Income. The Debtor had no other income of any consequence from any other operation or business.

2.	Monthly Operating Reports. The Debtor is in the process of filing with the Court and the United States Trustee monthly operating reports pursuant to the Operating Guidelines and Reporting Requirements for Chapter 11 cases (OGRR-ll) promulgated by the Office of the United States Trustee. As required, each monthly operating report includes (i) a comparative balance sheet, (ii) profit and loss statement, (iii) cash receipts and disbursements statement, (iv) copies of bank statements and reconciliations of bank balance to book balance for all accounts, and (v) a narrative.

The monthly operating reports show that on the date of filing, the Debtor held cash in the amount of $889.18.

E.  Significant Post-Petition Events

1.  Commencement of Chapter 11. The Debtor commenced its case seeking protection under Chapter 11 of the Bankruptcy Code on August 3, 2009.

2.  Retention of Professionals. Brown McCarroll, L.L.P. filed an application for employment which the Court subsequently approved. The order approving the application was entered on September 22, 2009.

3.  Cash Collateral. There are no cash collateral issues, as the Property is not currently generating income. There are no post-petition financing issues.

4.  Bar Date. The Court set November 30, 2009, as the Bar Date for filing non-governmental proofs of claim. Two proofs of claim have been filed as of the filing of this Disclosure Statement. Additional claims are currently deemed "Allowed" as a result of Debtor's schedules.

F.  Summary of the Plan of Reorganization

The description of the Plan set forth below constitutes a summary only, and should be read in conjunction with the Plan, which is attached hereto **as Exhibit A.** The Plan is a legal document which will, upon confirmation, be binding on all parties. Creditors, equity interest holders and other parties-in-interest are urged to consult with independent counsel and review the more detailed description of the Plan contained in Section V of this Disclosure Statement as well as the Plan itself.

The Plan of Reorganization proposes to provide for the continued marketing and development of the Debtor's real estate and related assets, with the equity of the Reorganized Debtor owned by the secured creditor Cumberland 90 and, if certain cash remittances are made, by certain existing prepetition equity holders, known as the Participating Equity. To the extent that Participating Equity does not make a cash contribution payment, the Debtor will execute and deliver a deed in lieu of foreclosure to Cumberland 90 at the expiration of 120 days after the Effective Date of this Plan, to be held in escrow for 365 days. During this post-confirmation time period, the Debtor will have full rights to continue to market and develop the assets of the Debtor. Any and all such transfers of the Debtor's assets will be subject to the existing liens of the Debtor's secured creditors, as modified herein.

In summary, the Plan of Reorganization will implement the restructuring of the Debtor's current debt by permitting Debtor's prepetition investors to buy part of the new equity in the Reorganized Debtor ("Participating Equity") and providing the Participating Equity with 120 days to raise the $1,000,000 needed for the new equity.

If the Participating Equity is unable to raise the $1,000,000 needed for the new equity by the 120th day after the Effective Date, then DH Orchard will execute a deed in lieu of

foreclosure to be delivered to Cumberland 90 to be held in escrow until December 31, 2010, to allow DH Orchard to liquidate its assets in an orderly fashion.

If the Participating Equity raises the $1,000,000 needed for new equity, Cumberland 90 will take over management and all property expenses upon receipt of payment of the buy-in. The Reorganized Debtor will proceed to market the Property and maintain minimum sales price for entire real estate tract of $2.50 per square foot for the first 60 months after Effective Date. In the event of liquidation of the Debtor's assets, the proceeds shall be distributed as follows (1) Bexar County Tax Assessor's secured claim; (2) the Doss, Ltd. note; (3) the accrued amount of the Cumberland 90 secured note; (4) all Allowed General Unsecured Claims; (5) reimbursement of Participating Equity's prepetition contributions; (6) the Management Partner for the former general partner of DH Orchard; and (7) distributions to Participating Equity and Cumberland 90.

See Section IV of this Disclosure Statement along with Article IV of the Plan for a more detailed description of the reorganization and restructuring of the Debtor's current debt and the Participating Equity's distribution rights upon a liquidation event of the Reorganized Debtor's assets

### III. DESCRIPTION OF TREATMENT OF CLAIMS UNDER PLAN

<u>Class I - Administrative Claims</u>. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under Bankruptcy Code § 327 or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of an Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate, provided no request for payment shall be required with respect to Administrative Claims that have been previously paid or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. <u>This class is not impaired</u>.

<u>Class II - Priority Non-Tax Claims</u>. Each holder of an Allowed Class II Priority Non Tax Claim shall be paid in full or pursuant to an agreement between Debtor and such claimant on the

Effective Date. The Debtor does not believe any Class II claims exist at this time. <u>This class is not impaired</u>.

Class III - Priority Tax Claims. Each holder of a Class III Priority Tax Claim shall receive payment of its Allowed Claim, in full, on or before the Effective Date or pursuant to agreement between Debtor and the Priority Tax Claimant. The Debtor does not believe any Class II claims exist at this time. <u>This class is not impaired</u>.

Class IV - Secured Claim of Bexar County Tax Assessor. The Allowed Secured Claim of Bexar County Tax Assessor shall be paid in full upon either (a) the payment of the $1,000,000 buy-in as outlined in Paragraph 2.2 above; (b) upon the sale of the Debtor's real property as outlined in Paragraph 2.2 above; or (c) upon a sale of the real property by Cumberland 90 subsequent to the issuance of a deed in lieu of foreclosure to Cumberland 90 as outlined in Paragraph 2.2 above. The Bexar County claim shall continue to accrue interest on its secured claim to the extent and at the interest rate under applicable state law and Bankruptcy Code § 511. The lien of Bexar County will continue to attach to the Debtor's property in the same priority and extent as it existed on the Petition Date. <u>Class IV is impaired</u>.

Class V - Secured Claim of Doss, Ltd. The Allowed Secured Claim of Doss, Ltd. shall be paid in full upon either (a) the sale of the Debtor's real property as outlined in Paragraph 2.2 above; or (b) upon a sale of the real property by Cumberland 90 subsequent to the issuance of a deed in lieu of foreclosure to Cumberland 90 as outlined in Paragraph 2.2 above. The Doss, Ltd. claim shall continue to accrue interest on its secured claim to the extent and at the contractual non-default interest rate applicable to the Doss, Ltd. obligation. The lien of Doss, Ltd. will continue to attach to the Debtor's property in the same priority and extent as it existed on the Petition Date. <u>Class V is impaired</u>.

Class VI - Secured Claim of Cumberland 90. The Allowed Secured Claim of Cumberland 90 shall be paid in full upon the Effective Date through the conversion of the Cumberland 90 secured claim into the equity in the Reorganized Debtor under the terms and conditions outlined in Paragraph 2.2 above. If the Participating Equity fails to contribute $1,000,000 to the Reorganized Debtor as a buy-in by the 120th day after the Effective Date, Cumberland 90 shall receive a deed in lieu of foreclosure from the Reorganized Debtor with the consent of Participating Equity, with such deed in lieu of foreclosure held in escrow until December 31, 2010, to allow DH Orchard to liquidate its assets in an orderly fashion. If no liquidation occurs before December 31, 2010, Cumberland 90 will be authorized to execute the deed in lieu of foreclosure and become owner of real property. The Cumberland 90, Ltd. claim shall continue to accrue interest on its secured claim to the extent and at the contractual non-default interest rate applicable to the Cumberland 90, Ltd. obligation. The lien of Cumberland 90, Ltd. will continue to attach to the Debtor's property in the same priority and extent as it existed on the Petition Date. <u>Class VI is impaired</u>.

Class VII - Unsecured Claims. Allowed Unsecured Claims will be paid in full upon the sale of the Debtor's assets under the terms and conditions outlined in Paragraph 2.2 above. <u>Class VII is impaired</u>.

Class VIII - Equity Interests. All Equity Interests in the Debtor will be canceled upon the completion of disbursements under the Plan, subject to the terms and conditions set forth in Paragraph 2.2 above. To the extent that Participating Equity contributes its $1,000,000 buy-in payment to the Reorganized Debtor, Participating Equity shall be entitled to distributions from the sale of the Debtor's real property. To the extent that excess proceeds exist from such sale such that all prepetition claims and equity interest contributions have been paid in full as outlined in Paragraph 2.2 above, Participating Equity will be entitled to 17.3% of such excess proceeds. Class VIII is impaired.

## IV. MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan of Reorganization will be implemented as outlined above. The reorganization and restructuring of the Debtor's current debt will occur in the following manner:

- Certain DH Orchard participating prepetition investors ("Participating Equity") will buy part of the new equity of the Reorganized Debtor, which will own the entire equity of the Debtor.

- Participating Equity will purchase its portion of new equity by remitting $1,000,000 to the Reorganized Debtor.

- Participating Equity will have 120 days from the Effective Date of the Plan to raise the $1,000,000 contribution and to contribute the funds to the Reorganized Debtor.

- In exchange for the $1,000,000, the Participating Equity will acquire 17.3% of the new equity in the Reorganized Debtor.

- Cumberland 90's secured claim will be converted to the remaining 82.7% of the new equity in the Reorganized Debtor, without a further buy-in requirement on Cumberland 90.

- No further option for additional buy-in will be available to the Participating Equity.

- Additionally, Participating Equity's distribution rights upon a liquidation event of the Reorganized Debtor's assets will be modified as follows:

    Upon the sale of the assets, the proceeds of the sale shall be distributed as follows to the extent such proceeds exist:

    1. First, the allowed Bexar County Tax Assessor's secured claim for property taxes will be paid in full.

    2. Next, the Doss, Ltd. note will be paid in full, with principal and accrued annual interest of 7%, less any amounts of the $1,000,000 buy-in that is contributed to Doss, Ltd. as a pay-down on the Doss, Ltd. obligation.

3. Next, the accrued amount of the Cumberland 90 secured note that would have been due and payable, with principal and accrued annual interest of 7% that would have been due at the time of such sale will be paid in full from the sale proceeds.

4. Next, all allowed general unsecured claims of the Debtor will be paid in full.

5. Next, the Participating Equity members will be paid sums equal to their respective prepetition contribution amounts without interest (including Cumberland 90's prepetition equity investment).

6. Next, the Management Partner for the former general partner of DH Orchard will be reimbursed for its management expenses, including expenses for legal fees, taxes, property management, and other expenses allowed under its management agreement.

7. Next, the remaining proceeds, if any, will be paid out on the following percentages:

    (1) 82.7% to Cumberland 90
    (2) 17.3% to the Participating Equity in repayment of their $1,000,000 buy-in.

8. The Reorganized Debtor will set a minimum sales price for entire real estate tract of $2.50 per square foot for the first 60 months after Effective Date. The sales price will be subsequently adjusted following the Sixtieth (60th) month to achieve net proceeds payments sufficient to pay in full through paragraph #5 above (repayment of Participating Equity's contributions).

9. Cumberland 90 will take over management and all property expenses upon receipt by the Reorganized Debtor of the $1,000,000 buy-in from Participating Equity.

10. If Participating Equity is unable to make the $1,000,000 buy-in by 120th day after the Effective Date, then DH Orchard will execute a deed in lieu of foreclosure to be delivered to Cumberland 90 to be held in escrow until December 31, 2010, to allow DH Orchard to liquidate its assets in an orderly fashion. If no liquidation occurs before December 31, 2010, Cumberland 90 will be authorized to execute the deed in lieu of foreclosure and become owner of real property.

## V. LIQUIDATION ANALYSIS

A. <u>Property</u>. Though the fair market value of the Property greatly exceeds the debts owed to Debtor's secured creditors, a liquidation sale of the Property would result in a

4349708.1
58478.1

10

significantly lower price. Accordingly, the Debtor believes that liquidation would not result in funds being available above the amounts owed to Doss, Ltd., especially given the possibility of the Court granting a lifting of the automatic stay in a Chapter 7 context to allow the holder of the Doss, Ltd. secured claim to foreclose on the Property.

B.  Claims. Counsel for the Debtor has reviewed payments made to creditors within the 90 days proceeding the Bankruptcy Filing Date and any payments made to insiders within one year prior to the filing of the Chapter 11 case. Payments to creditors appear to be within the ordinary course of business. Payments to related parties within the year immediately proceeding the filing appear to be for legitimate business purposes.

C.  Analysis. The Plan proposes to allow for a distribution of the equity in the Reorganized Debtor to the second-tier secured creditor – Cumberland 90, Ltd. – and, if a certain buy-in payment is made to the Reorganized Debtor, certain prepetition equity holders, known as Participating Equity. The reorganization will allow the continued marketing of the Property in a continually-improving real estate environment. If the buy-in payment is not made, the marketing of the Property will continue for one year with the sales price set at an amount that will allow the repayment of secured and general unsecured claims. As such, the Plan proposes a greater distribution than liquidation. Liquidation would likely provide no distribution for creditors other than a payment to Doss, Ltd. through foreclosure, no payment of administrative claims, and no distribution to unsecured creditors.

D.  Executory Contracts and Unexpired Leases. All executory contracts of the Debtor shall be assumed retroactively as of the Effective Date, except as may be specifically assumed by Debtor pursuant to separate motion filed at the time of the Confirmation Hearing, if and only if Participating Equity remits the $1,000,000 payment to the Reorganized Debtor. To the extent that the $1,000,000 payment is not remitted, Cumberland 90 shall have exclusive rights to assume and/or reject all executory contracts as of the 121st day after the Effective Date. All contracts not specifically assumed by Cumberland 90 by the 150th day after the Effective Date of the Plan will be deemed rejected.

E.  Miscellaneous Provisions.

1.  Retention of Jurisdiction. As more specifically provided in the Plan, the Court shall retain jurisdiction with respect to all matters arising out of, and related to the Chapter 11 bankruptcy case and Plan of Reorganization, after the Confirmation Date.

2.  Amendment and/or Modification of Plan. The Plan may be amended or modified at any time prior to the Confirmation Date upon such notice as the Court may require. The Plan may be amended or modified at any time prior to the Effective Date, with the approval of the Court, to remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as it does not materially and adversely affect holders of claims or interests.

3.  Severability. The invalidity, voidness, or unenforceability of any provision of the Plan will in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

4. Discharge. The rights and treatment afforded in the Plan for all claims against and interests in the Debtor will be in exchange for and in complete satisfaction, discharge, and release of claims and interests of any nature, including any interest accrued on such claims from and after the Petition Date, against the Debtor and any of its assets. Except as otherwise provided in the Plan, on the Effective Date, claims against and interests in the Debtor will be satisfied, discharged, and released in full and all persons shall be precluded from asserting against the Debtor, its successors, or their respective assets or further claims against or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

5. Binding Effect. The Plan will be binding upon and inure to the benefit of the Debtor and the holders of claims against and interests in the Debtor.

6. Conditions Precedent. Entry of a Confirmation Order, is the only condition precedent to the occurrence of the Effective Date of the Plan.

## VI. TAX CONSEQUENCES OF PLAN

The following discussion summarizes certain considerations that may affect the anticipated federal income tax consequences of implementation of the Plan to holders of claims and interests and to the Debtor. It does not address all federal income tax consequences of the Plan nor does it address the state or local income tax or other state and local tax consequences of implementation of the Plan to holders of claims against and interests in the Debtor. Counsel for the Debtor are not tax attorneys and have not, and will not render any opinion concerning the tax consequences of the Plan to the Debtor or any other entity.

The description of the federal income tax consequences of implementing the Plan is based on interpretation of the applicable provisions of the Internal Revenue Code of 1986 (the "1986 Tax Code"), the regulations promulgated thereunder and other relevant authority, including all amendments and revisions to the 1986 Tax Code. This interpretation, however, is not binding on the Internal Revenue Service ("IRS") or any court. The Debtor has not obtained, nor does it intend to obtain, a ruling from the IRS, nor has the Debtor obtained an opinion of counsel with respect to any of these matters. The ability to predict how the IRS or the courts will treat certain issues affecting projected federal income tax consequences of implementing the Plan is more limited than it might otherwise be because, in addition to the IRS's continuing reexamination of the federal income tax treatment of certain matters, some of the provisions of the 1986 Tax Code and the regulations promulgated thereunder were substantially revised by the Revenue Act of 1987, the Technical and Miscellaneous Revenue Act of 1988, the Revenue Reconciliation Act of 1989, the Revenue Reconciliation Act of 1990 and other recent tax legislation. Finally, the discussion below is general in nature and is not directed to the specific tax situation of any particular interested taxpayer.

FOR THESE REASONS, ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE TAX CONSEQUENCES OF IMPLEMENTATION OF THE PLAN TO THEM UNDER APPLICABLE FEDERAL, STATE AND LOCAL TAX LAWS.

A.  Tax Consequences to Holders of Claims

Holders of claims may be required to recognize income or may be entitled to a deduction as a result of implementation of the Plan. The exact tax treatment depends on, among other things, each holder's method of accounting, the nature of each holder's claim, the fair market value of any property received, and whether and to what extent such holder has taken a bad debt deduction in prior taxable years with respect to the particular debt owed to it by the Debtor. A holder's method of accounting and the extent such holder has taken a bad debt deduction determines a holder's "tax basis" in its claim. To the extent that the fair market value of property received under the Plan exceeds the tax basis in the claim, taxable income must be recognized by a holder. To the extent the tax basis in a holder's claim is greater than the fair market value of property received under the Plan, a loss may be recognizable. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE TAX CONSEQUENCES OF IMPLEMENTATION OF THE PLAN TO THEM UNDER APPLICABLE FEDERAL, STATE AND LOCAL TAX LAWS.

B.  Tax Consequences of Holders of Interests

The Debtor does not anticipate that the Plan will result in any tax consequences to the holders of interests in the Debtor pursuant to 26 U.S.C. § 701 *et seq.*

HOWEVER, EACH HOLDER OF AN INTEREST IS URGED TO CONSULT WITH HIS OR ITS OWN TAX ADVISOR REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE TREATMENT OF HIS OR ITS INTEREST UNDER THE PLAN.

## VII. CONFIRMATION STANDARDS

The Court shall confirm the Plan at the Confirmation Hearing only if the requirements of § 1129 of the Code are met. Among the requirements for confirmation of a plan of reorganization are that the Plan must be (i) accepted by all impaired classes of claims and equity interest, or if rejected by an impaired class, that the Plan does not discriminate unfairly and is fair and equitable as to such class, (ii) feasible, and (iii) in the best interest of holders of claims and interest that are impaired under the Plan. These are complex statutory provisions and this summary is not intended to be a complete statement of the law.

A.  Acceptance

Each impaired class must accept the Plan by the percentages set forth in § 1126 of the Code. Under the Plan, Classes IV and V are impaired by the Plan and are entitled to vote to accept or reject the Plan. Class VI is receiving nothing, and is deemed to reject. In addition, the Debtor expressly reserves the right to seek confirmation under § 1129(b) with respect to any class of claims that is entitled to vote to accept or reject the Plan, and such class rejects the Plan.

B.  Unfair Discrimination/Fair and Equitable

If less than all the impaired classes accept the Plan, the Plan may nevertheless be confirmed by the Court under § 1129(b) of the Code, as long as one (1) impaired class has affirmatively voted to accept the Plan, not counting the votes of any "insiders." In order to be

confirmed pursuant to §1129(b) of the Code, the Court must find, with respect to each unaccepting class, that the Plan "does not discriminate unfairly" and is "fair and equitable with respect to that class." A plan does not discriminate unfairly if no class receives more than it is entitled to for its claim. The Code establishes different "fair and equitable" tests for secured creditors and unsecured creditors as follows:

    1.    Secured Creditors. A secured creditor whose claim is impaired must retain the liens securing its claim and receive under the Plan, cash payments that have a present value at least equal to such holder's allowed secured claim, or otherwise receive the "indubitable equivalent" of the value of the interest in the debtor's asset upon which it holds a lien. Debtor believes that the Debtor's secured creditors will receive the indubitable equivalent of their secured claims under the Plan by the implementation of the transfer of the equity in the Reorganized Debtor to the specified entities as well as the ability to continue to market the Property with the non-secured claims remaining intact.

    2.    Unsecured Creditors. An unsecured creditor whose claim is impaired must receive or retain under the Plan, property of a value at least equal to the amount of its allowed unsecured claim, or the holders of claims and interests that are junior to the claims of the dissenting class shall not receive any property under the Plan, this principle is also referred to as the 'absolute priority rule' which is discussed briefly below.

    3.    Equity Interests. An equity interest holder, or shareholder, must receive and retain under the Plan, property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of the interest, or the holder of any interest junior to the nonaccepting class shall not receive or retain any property under the Plan, this principle is also referred to as the 'absolute priority rule' which is discussed briefly below.

    4.    Absolute Priority Rule. In order for a plan to be "fair and equitable" it must comply with the 'absolute priority rule', which requires with respect to each impaired dissenting creditors and interests holders that such claims or creditors receive or retain on account of their claims or interests, property of a value, as of the Effective Date of the Plan, at least equal to the value of their claim or interest or, if they receive less than full value, that no inferior or junior class receive or retain anything on account of such junior claim or interest. In other words, beginning with the most senior impaired dissenting class of creditors, such class must receive full and complete payment before any class in descending rank or priority may participate in a distribution under the Plan.

    C.    <u>Feasibility</u>

If the Debtor is proposed to be reorganized, the Court must also determine that confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtor, unless provided in the Plan. This is a liquidating plan, therefore feasibility should not be a contested issue.

D.  Best Interests

Section 1129(a)(7) of the Code requires that, with respect to each impaired class, each member of such class either has accepted the Plan, or will receive or retain under the Plan on account of its claim, property of a value, as of the Effective Date, that is at least equal to the amount which such member of the class would receive or retain if the Debtor were liquidated under Chapter 7 of the Code. The Court, in considering whether the Plan is in the "best interests" of creditors, is not required to consider any alternative to the Plan other than the dividend projected in a liquidation of all the debtor's assets under Chapter 7 of the Code. The Debtor has determined that confirmation of the Plan will provide each holder of an allowed claim or interest with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtor under Chapter 7 of the Code.

E.  Good Faith Requirement

In order to confirm a Plan, the Court must find that the Plan was proposed in good faith and that the Plan and its proponent have complied with all applicable provisions of the Code.

## VIII. ALTERNATIVES TO THE PLAN

A.  Dismissal

If a Plan cannot be confirmed in this case, an alternative would be the dismissal of the Debtor's case The Debtor's assets would be liquidated by the first secured mortgage holder, Doss, Ltd., likely leaving nothing for other creditors.

B.  Conversion to Chapter 7

If no Chapter 11 Plan of Reorganization can be confirmed, the bankruptcy case may be converted to a liquidation case under Chapter 7 of the Code, and a trustee would be elected or appointed to liquidate the assets of the Debtor. The Debtor believes that liquidation under Chapter 7 would result in no distribution to any creditor other than Doss, Ltd.

## IX. CONCLUSION AND RECOMMENDATION

This Disclosure Statement is intended to assist each holder of claims against and interests in the Debtor to make an informed decision regarding the acceptance of Debtor's Plan. If the Plan is accepted, all creditors will be bound by its terms. Debtor believes that confirmation and implementation of this Plan is preferable to any of the alternatives described above because it will provide a greater recovery to claimants than any other alternative. Therefore, Debtor respectfully urges each holder of a claim against or interest in the Debtor to carefully review the Disclosure Statement and the enclosed copy of the Plan, to accept the Plan and to evidence such acceptance by returning their ballots on or before the date to be fixed by the Court.

DATED this day of 3rd day of November, 2009.

Respectfully submitted,

ORCHARD LIMITED GP, LLC
By: BLACKHAWK PARTNERS, LLC,
its Manager

By: */s/ Matthew Q. Hainline*
    Matthew Q. Hainline
    Managing Member

Presented by:

BROWN MCCARROLL, L.L.P.
111 Congress Ave., Suite 1400
Austin, Texas 78701
(512) 479-9758
(512) 226-7318 (Fax)
Email: lbutler@mailbmc.com

By: */s/ Lynn Hamilton Butler*
    Lynn Hamilton Butler
    Texas State Bar No. 03527350

ATTORNEYS FOR DH ORCHARD LIMITED

# CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served through the Court's electronic noticing system on those parties receiving such notice, and upon the parties listed on the attached Service List by depositing same in the United States First Class Mail on this 3rd and 4th days of November, 2009.

| | | |
|---|---|---|
| DH Orchard Limited<br>6836 Bee Caves Road, Suite 202<br>Austin, Texas 78746 | U.S. Trustee<br>903 San Jacinto, Room 230<br>Austin, TX 78701 | Adams & Polumsky<br>8000 IH 10 West, Suite 1145<br>San Antonio, TX 78230 |
| Bexar County Tax Assessor<br>P.O. Box 839950<br>San Antonio, TX 78283 | Blackhawk Development, LLC<br>6836 Bee Caves Road, Suite 202<br>Austin, TX 78746 | Carrington Coleman Sloman & Blumenthal, LLP<br>Attn: Charles Jordan<br>901 Main Street, Suite 5500<br>Dallas, TX 75202 |
| Charlotte A. Novak<br>P.O. Box 1532<br>Veneta, OR 97487-1532 | Cumberland 90, Ltd.<br>100 Crescent Court, Suite 210<br>Dallas, TX 75201 | Dale and Deborah Schneider<br>100 Kennedy Park Circle, Suite 204<br>Fergus Falls, MN 56538 |
| Dia Lucrii Global, LP<br>Attn: Jason D'Amato<br>10205 Westheimer, Suite 500<br>Houston, TX 77042 | Doss, Ltd.<br>Attn: Bill F. Knight<br>6300 Ridglea Place, Suite 1107<br>Fort Worth, TX 76116 | Pape-Dawson Engineering<br>555 E. Ramsey<br>San Antonio, TX 78216 |

/s/ *Lynn Hamilton Butler*
Lynn Hamilton Butler